846 F.2d 78
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
MECHANICAL PLASTICS CORP., Plaintiff-Appellant,
v.
UNIFAST INDUSTRIES, INC., Defendant/Cross-Appellant.
 Nos. 87-1371, 87-1374.
 United States Court of Appeals, Federal Circuit.
 March 28, 1988.
 
 Before NIES, ARCHER and MAYER, Circuit Judges.
 NIES, Circuit Judge.
 
 DECISION
 
 1
 Mechanical Plastics Corp. ("MPC") and Unifast Industries, Inc. ("Unifast") both appeal from the final judgment of the District Court for the Eastern District of New York, No. CV 84-3290 (April 13, 1987) (Wexler, J.), which dismissed MPC's complaint on the ground that Unifast's accused device did not infringe MPC's United States Patent No. 4,075,924 ('924), and which awarded Unifast costs but not attorney's fees. We affirm.
 
 OPINION
 
 2
 The technology of the '924 patent, entitled "Anchor Assembly for Fastener," involves an anchoring device for fastening items to walls, commonly called a toggle bolt. MPC owns the patent by assignment. It asserts that the last claim of the patent, independent claim 30, is literally infringed by a device manufactured by Unifast. MPC does not assert infringement under the doctrine of equivalents.
 
 
 3
 In addition to arguing noninfringement, Unifast counters that the '924 patent is invalid as "on sale" within the meaning of 35 U.S.C. Sec. 102(b) (1982) and unenforceable because MPC committed inequitable conduct. Unifast also contends MPC falsely marked its product, allegedly not covered by the '924 claims, in violation of 35 U.S.C. Sec. 292. Finally, it seeks an award of attorney's fees under 35 U.S.C. Sec. 285, arguing that the case is exceptional.
 
 A. Literal Infringement
 
 4
 The district court was unclear as to whether it based its finding of noninfringement on MPC's failure to prove literal infringement or on Unifast's successful assertion of the reverse doctrine of equivalents. For example, the court stated:
 
 
 5
 11. The Unifast anchoring device functions in a different way from the patented device. The Unifast anchor permits the toggle plate to pivot freely into desired position against the blind side of the wall under the action of gravity, whereas the patented structure requires gripping means for applying orienting forces to the toggle plate. (See clause e of claim 30).
 
 
 6
 Mechanical Plastics Corp. v. Unifast Indus. Inc., 4 USPQ2d 1734, 1736 (E.D.N.Y.1987) (emphasis added).
 
 
 7
 Procedurally, the reverse doctrine of equivalents is not reached unless and until the patentee has carried its initial burden of proving literal infringement. Only then must the accused infringer "undertake the burden of going forward to establish the fact of non-infringement under the reverse doctrine of equivalents." SRI Int'l v. Matsushita Elec. Corp., 775 F.2d 1107, 1123-24, 227 USPQ 577, 587 (Fed.Cir.1985) (en banc) (citing Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 607 (1950)). Although we might remand in some instances when a district court's analysis similarly obfuscates the true basis for its judgment, "[w]e sit to review judgments, not opinions." Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1540, 218 USPQ 871, 880 (Fed.Cir.1983). Thus, if either basis is legally correct on the established facts and supports the judgment, we will affirm. Id.*
 
 
 8
 Unifast maintained in the district court, and continues to argue here, that not all elements of claim 30 are present in its accused device (that MPC has not carried its initial burden of proving literal infringement). Because we agree with that argument, we affirm the court's finding of noninfringement on that basis and need not address the reverse doctrine of equivalents.
 
 
 9
 Unifast argues that its accused device does not contain three separate elements required by the invention claimed in the '924 patent. Specifically, it asserts "[t]he claimed approximately perpendicular leg ends (clause d), force applying gripping means (clause g) and separate connection means (clause b) are not present." Our analysis of the "approximately perpendicular ... end portions of said leg members" element in clause (d) of claim 30 is sufficient to affirm the district court's finding of no infringement; therefore, we need not consider whether Unifast's accused device has either "gripping means for applying forces" or separate "means connecting." See SSIH Equip. S.A. v. United States Int'l Trade Comm'n, 718 F.2d 365, 376, 218 USPQ 678, 688 (Fed.Cir.1983) (because accused device did not have a memory for storing coded address and display data, one of several claimed elements, a finding of literal infringement "must fail").
 
 
 10
 The first inquiry in determining infringement is to interpret the claims, a question of law. See, e.g., McGill Inc. v. John Zink Co., 736 F.2d 666, 671, 221 USPQ 944, 948 (Fed.Cir.), cert. denied, 469 U.S. 1037 (1984). MPC argues that either the trunnion (pivot nub) or the stirrup, both mounted perpendicularly in the accused device, literally satisfies the perpendicular end portions element when that element is properly interpreted.
 
 
 11
 Claim 30 specifies legs of "flexible resilient plastic" in clause (a). As noted, clause (d) specifies "approximately perpendicular ... end portions of said leg members." MPC interprets that language to mean that the legs, and their perpendicular portions, need only be made out of resilient material. Unifast counters that, using the specification as a tool to interpret claim 30, the legs and their approximately perpendicular end portions must be flexible and resilient to produce the required resilient spring bias by which the claimed invention functions.
 
 
 12
 The specification supports Unifast's interpretation. See SRI Int'l, 775 F.2d at 1118, 227 USPQ at 583 (infringement is determined by reference to patent claims, and specification is useful tool of claim construction); Standard Oil Co. v. American Cyanamid Co., 774 F.2d 448, 452-53, 227 USPQ 293, 296 (Fed.Cir.1985) (specification is important basis for construing claims). The specification states:
 
 
 13
 [U]pper [approximately perpendicular] end portions ... of leg members ... are integrally connected thereto by arcuate portions ... to form bent leg connectors. These arcuately configured leg portions combine with the flexible and resilient character of the plastic material of the legs ... to provide stabilizing forces which retain the relative desired orientation and position of the members of the anchor assembly when it is positioned within a hollow wall.
 
 
 14
 * * *
 
 
 15
 * * *
 
 
 16
 ... Upon clearing the inner blind surface ... of the hollow wall, the anchor member ... is released, whereupon the resilient flexible arcuate portions connecting the upper end portions of the legs ... to the main leg portions ... provide resilient stabilizing forces which return the anchor member to its transverse position relative to the legs....
 
 
 17
 '924 Specification, column 7, lines 11-16; column 11, lines 20-26.
 
 
 18
 Neither the trunnion nor the stirrup of the accused device is "resilient" as this term must be interpreted. The term places a functional limitation, requiring a resilient spring bias, on the structural "perpendicular end portions" element. See, e.g., SSIH Equip., 718 F.2d at 376, 218 USPQ at 688 (although accused device had a memory, claim required "a memory for storing coded address and display data"; no literal infringement because no evidence coded address data actually stored). Neither the trunnion nor stirrup performs that function. Thus, MPC's principal argument, that the trunnion is two, separate, claimed elements--fastening means and perpendicular leg portions--fails. The trunnion is simply a fastening means which connects the legs to the toggle; it is not a perpendicular leg portion within the meaning of the claim.
 
 
 19
 As "an additional point," MPC argued in its brief that the stirrup or U-shaped portion of the accused device, which extends substantially perpendicularly--at a point--downward from the legs and functions to press the trunnions into the toggle, corresponds to the perpendicular leg portion structure. We cannot agree in view of the above interpretation of that claimed structural element. The stirrup is, as stated, not "resilient."
 
 
 20
 Based upon our interpretation of the claimed element of "approximately perpendicular ... end portions," therefore, the district court's finding of noninfringement is not clearly erroneous. See Polaroid Corp. v. Eastman Kodak Co., 789 F.2d 1556, 1573-74, 229 USPQ 561, 574 (Fed.Cir.) (finding on infringement is question of fact subject to clearly erroneous standard of review), cert. denied, 107 S.Ct. 178 (1986). We affirm that finding.
 
 B. Other Issues
 
 21
 Our decision to affirm the district court's finding that the '924 patent is not infringed by the Unifast accused device resolves the parties' controversy. In its conclusions of law, however, the court held the '924 patent "valid" and "not invalid" as "on sale" under 35 U.S.C. Sec. 102(b). When our affirmance of a finding of noninfringement resolves the dispute, we need not review the determination of validity. FMC Corp. v. Hennessy Indus., Inc., Nos. 87-1268, 87-1283, slip op. at 3, n. 4 (Fed.Cir. Dec. 31, 1987); Vieau v. Japax, 823 F.2d 1510, 1517, 3 USPQ2d 1094, 1100 (Fed.Cir.1987).
 
 
 22
 The district court's judgment itself does not specifically incorporate the holding on validity. The relevant portion of the judgment states:
 
 
 23
 ORDERED and ADJUDGED that the plaintiff take nothing of the defendant; that judgment is entered in favor of the defendant; that the complaint is dismissed; and that the defendant is entitled to costs only.
 
 
 24
 Therefore, we need not modify or vacate the judgment on the issue of validity. The court's holding on that issue is rendered moot and of no precedential value. See FMC Corp., slip op. at 3, n. 4 (because we affirm that part of the judgment finding no infringement of the patent, the argument that the patent is invalid is moot).
 
 
 25
 Similarly, we need not address Unifast's charges against MPC of inequitable conduct and mismarking except in connection with its request for attorney's fees. The district court made no findings or conclusions on these issues except to summarily deny fees. In such circumstances this court may remand for the district court to enter such findings and conclusions. See, e.g., CPG Prods. Corp. v. Pegasus Luggage, Inc., 776 F.2d 1007, 1015, 227 USPQ 497, 502 (Fed.Cir.1985) (case remanded because district court failed to determine whether case is exceptional and warrants award of attorney's fees).
 
 
 26
 In this case, however, the evidence of inequitable conduct is so meager and unpersuasive that giving Unifast every favorable inference, we conclude that a remand for findings and conclusions on inequitable conduct would be a waste of judicial resources. The evidence does not meet the standard of clear, unequivocal, and convincing evidence required to render a patent unenforceable. Driscoll v. Cebalo, 731 F.2d 878, 884, 221 USPQ 745, 750 (Fed.Cir.1984). In addition, Unifast has presented no evidence of MPC's intent to deceive the public by mismarking its product. Unifast admits that there is no express evidence of intent to mislead and offers no circumstantial evidence from which to find the requisite intent. Accordingly, the record could not possibly support a finding for Unifast on the mismarking claim. See Arcadia Mach. & Tool, Inc. v. Sturm, Ruger & Co., 786 F.2d 1124, 1125, 229 USPQ 124, 125 (Fed.Cir.1986) (action for false marking must fail absent evidence of intent to deceive the public). Nor is there clear and convincing evidence to support Unifast's claim that MPC's charge of infringement is frivolous. Thus, an award of attorney's fees is unwarranted in this case. See Reactive Metals & Alloys Corp. v. ESM, Inc., 769 F.2d 1578, 1582, 226 USPQ 821, 824 (Fed.Cir.1985) (party seeking attorney's fees must establish facts showing exceptionality by clear and convincing evidence).
 
 CONCLUSION
 
 27
 Having reviewed both parties' arguments, we affirm the judgment of noninfringement and the award of costs only to Unifast.
 
 
 28
 ARCHER, Circuit Judge, concurring in result.
 
 
 29
 I agree with the result reached by the majority but for other reasons, as explained below.
 
 The pertinent portions of claim 30 read:
 30. An anchor assembly ... which comprises:
 
 30
 a. at least two elongated strips of flexible resilient plastic ...
 
 
 31
 * * *
 
 
 32
 * * *
 
 
 33
 d. fastening means to connect an end portion of each leg member to said anchor member, said connected end portions of said leg members being approximately perpendicular to said leg members....
 
 
 34
 The majority in construing these portions of claim 30 determines that "[t]he term [resilient] places a functional limitation, requiring a resilient spring bias, on the structural 'perpendicular end portions' element." In the guise of construing this claim, it has improperly read a functional limitation from the specification into the claim which is not therein present. Loctite Corp. v. Ultraseal Ltd., 781 F.2d 861, 867, 228 USPQ 90, 93 (Fed.Cir.1985). It is the claims which define the invention--not the specification. "Courts can neither broaden nor narrow the claims to give the patentee something different than what he has set forth. No matter how great the temptations of fairness or policy making, courts do not rework claims. They only interpret them." Autogiro Co. of America v. United States, 384 F.2d 391, 396, 155 USPQ 697, 701 (Ct.Cl.1967) (footnote omitted).
 
 
 35
 When the limitation "two ... strips of ... resilient plastic" is properly construed, see Loctite Corp., 781 F.2d at 866-67, 228 USPQ at 93, it is clear that the term "resilient" is merely descriptive of the plastic strips. There is not a word in the claim as to any function performed by the resiliency of the plastic. This should be compared to the other claims which expressly contain this functional limitation. D.M.I., Inc. v. Deere & Co., 755 F.2d 1570, 1574, 225 USPQ 236, 239 (Fed.Cir.1985) (it is well established that a limitation which appears in one claim cannot be read into another claim). In the absence of such a recitation in claim 30, it is improper to ascribe functionality based on the description of the invention contained in the specification.
 
 
 36
 In spite of my disagreement with the majority's construction of claim 30, its decision of no infringement by the accused device is, in my view, the proper one. Mechanical Plastics Corp. ("MPC") argues that the limitation "end portions of said leg members being approximately perpendicular to said leg members" is met by either the trunnion or the stirrup (U-shaped) portion. I disagree.
 
 
 37
 I subscribe to the majority's determination that the trunnion is a fastening means which connects the legs to the toggle and that it is not a perpendicular end portion. The claim requires two separate structures: a fastening means and a perpendicular end portion. The trunnion cannot be both.
 
 
 38
 MPC also argues, in the alternative, that the accused device infringes because the horseshoe or U-shaped portion is encompassed by the limitation requiring "end portions ... approximately perpendicular to said leg members." This argument is not persuasive because this term is plural and therefore requires two separate leg ends. The horseshoe portion is one piece and therefore does not meet this claim limitation. Since the claim limitation calling for approximately perpendicular end "portions" of the leg members is not found in the accused device, there is no literal infringement. Uniroyal, Inc. v. Rudkin-Wiley Corp., 837 F.2d 1044, 1054, 5 USPQ2d 1434, 1441 (Fed.Cir.1988).
 
 
 39
 Accordingly, I concur in the result reached by the majority.
 
 
 
 *
 Our previous statement in Chore-Time Equipment, Inc. v. Cumberland Corporation, 713 F.2d 774, 781 n. 5, 218 USPQ 673, 677 n. 5 (Fed.Cir.1983), is appropriate: "In affirming the judgment here, we do not, of course, thereby adopt as our own, the opinion, or any particular portion of the opinion, that accompanied the judgment appealed from."